STATE OF RHODE ISLAND
AND PROVIDENCE PLANTATIONS
KENT, SC

SUPERIOR COURT

(FILED – March 17, 2008)

JOHN DOE, a minor, by and through :
his Parents and Natural Guardians

VS.

EAST GREENWICH SCHOOL DEPARTMENT (hereinafter referred to as "EGSD");
THE EAST GREENWICH SCHOOL COMMMITTEE;
THE TOWN OF EAST GREENWICH;
HELEN O'HARA, INDIVIDUALLY AND IN HER CAPACITY AS "SPECIAL EDUCATION DIRECTOR" AND "ASSISTANT SUPERINTENDENT;
CHARLES MEYERS, INDIVIDUALLY AND IN HIS CAPACITY AS "SUPERINTENDENT"
MICHAEL ZAJAC, INDIVIDUALLY AND IN HIS CAPACITY AS PRINCIPAL OF THE ARCHIE R. COLE JUNIOR HIGH (aka "ARCHIE R. COLE MIDDLE SCHOOL" – hereinafter referred to as "COLE");
MARGARET DEVINE, INDIVIDUALLY AND IN HER CAPACITY AS "RESOURCE TEACHER" OF COLE;
SHARON FOLEY, INDIVIDUALLY AND IN HER CAPACITY AS "SCHOOL SOCIAL WORKER" IN THE EGSD;
DONNA PHILLIPS, INDIVIDUALLY AND IN HER CAPACITY AS "MATH TEACHER" AT COLE;
KELLY GRENNAN, INDIVIDUALLY AND IN HER CAPACITY AS "SCIENCE TEACHER AT COLE;
PETER TAUSEK, INDIVIDUALLY AND IN HIS CAPACITY AS "ENGLISH TEACHER" AT COLE;
STEVEN GARNEAU, INDIVIDUALLY AND IN HIS CAPACITY AS "TECH ED" TEACHER AT" COLE;
DALE DiNAPOLI, INDIVIDUALLY AND IN HER CAPACITY AS "ART TEACHER" AT COLE;
ELLISE WOLFF, INDIVIDUALLY AND IN HER CAPACITY AS "HOME ECONOMICS" TEACHER AT COLE;
RAYMOND MARCACCIO, INDIVIDUALLY AND IN HIS CAPACITY AS REPRESENTATIVE OF THE EGSD;

RHODE ISLAND DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION (hereinafter referred to as "RIDOE");
PETER McWALTERS, IN HIS CAPACITY AS COMMISSIONER OF ELEMENTARY AND SECONDARY EDUCATION;
RHODE ISLAND BOARD OF REGENTS FOR ELEMENTARY AND SECONDARY EDUCATION;

**PAUL PONTARELLI, INDIVIDUALLY AND IN HIS CAPACITY AS HEARING OFFICER OF RIDOE;**
**MAUREEN HOBSON, esq., INDIVIDUALLY AND IN HER CAPACITY AS "IMPARTIAL HEARING OFFICER" FOR RIDOE;**

**ADDITIONAL UNNAMED SUBSTITUTE TEACHERS, INDIVIDUALLY AND IN THEIR CAPACITY AS REPRESENTATIVE OF THE EGSD**

**THE FULL COMPLAINT WILL INCLUDE OTHER INDIVIDUALS NOT NAMED IN THIS REQUEST FOR IMMEDIATE PROTECTIONS.**

## PARTIES

1. **John Doe is a seventh grade student at the Archie R. Cole Junior High School (aka Archie R. Cole Middle School – hereinafter referred to as "Cole." This civil action is brought on his behalf by and through his parents and natural guardians. John Doe and his parents are residents of the town of East Greenwich, RI.**
2. **Defendant East Greenwich School Committee is a municipal body operating and organized under the laws of Rhode Island and imbued by RIGL 16-2-9 with the power to control and manage Cole, and the responsibility to assure the implementation of the laws of the United States and of the State of Rhode Island in the exercise of that power.**
3. **Defendant East Greenwich School Department is the Local Educational Agency for the District of East Greenwich in the State of Rhode Island**
4. **Defendant Charles Meyers is the Superintendant of the East Greenwich School Department. Pursuant to RIGL 16-2-11, he is employed by the school committee for the care and supervision of the public schools, and as the chief administrative agent of the school committee. He is also charged with the appointment of the employees of the school district, and to ensure compliance with all relevant provisions of federal and state law.**
5. **Defendant Helen O'Hara is the "Special Education Director" and "Assistant Superintendant." She is employed by the School Committee to enforce the federal and state laws and regulations related to educational matters and specifically regarding the rights and protections of students with disabilities. It is her job to ensure that all schools of the East Greenwich school district, public and private, comply with federal and state laws, regulations, and to ensure that children with disabilities receive due process of law, and an education free of discrimination and harassment. Her dual role is questionable regarding conflict of interest, particularly regarding financial expenditures.**
6. **Defendant Peter McWalters is the Commissioner of Elementary and Secondary Education for the State of Rhode Island. The commissioner's duties include the enforcement of the policies and programs of the Board of Regents for Elementary and Secondary Education, to require the observance of all laws relating to schools and education, and to interpret school law and decide**

**controversies that are appealed from the LEA. He is, by virtue of the above, empowered to hear interim order hearings.**

7. **Defendant Rhode Island Department of Education ("RIDOE") is the statewide supervisory authority of all school districts throughout the State of Rhode Island.**
8. **Defendant Paul Pontarelli is an attorney employed by RIDOE as a "Hearing Officer."**
9. **Defendant Maureen Hobson is an attorney who is hired by RIDOE as an alleged "Impartial Hearing Officer."**
10. **Defendant Michael Zajac is employed by the East Greenwich School Committee as the principal of Cole.**
11. **Defendant Margaret Devine is employed by the East Greenwich School Committee as a "resource teacher" at Cole.**
12. **Defendant Sharon Foley is employed by the East Greenwich School Committee as a "school social worker," at Cole.**
13. **Defendant Donna Phillips is employed by the East Greenwich School Committee as a "mathematics teacher" at Cole.**
14. **Defendant Kelly Grennan is employed by the East Greenwich School Committee as a "science teacher" at Cole.**
15. **Defendant Peter Tausek is employed by the East Greenwich School Committee as an "English teacher" at Cole**
16. **Defendant Dale DiNapoli is employed by the East Greenwich School Committee as an "art teacher" at Cole.**
17. **Defendant Ellise Wolff is employed by the East Greenwich School Committee as a "home economics teacher" at Cole.**
18. **Defendant Caroline Bradshaw is employed by the East Greenwich School Committee as a "guidance counselor" at Cole.**
19. **Other unidentified substitute teachers at Cole.**

## JURISDICTION AND VENUE

20. This is a civil action filed to protect the rights of John Doe, as guaranteed by the United States Constitution and Rhode Island Constitution, United States and Rhode Island Civil and Criminal Laws, Section 504 of the Civil Rights Act of 1973, the Americans with Disabilities Act, the Individuals with Disabilities Education Act of 1997 (IDEA 1997), the IDEA Improvement Act of 2004, the No Child Left Behind Act, the Education for all Handicapped Children Act of 1975, Health Insurance Portability and Accountability Act (HIPAA), Federal Education Rights to Privacy Act (FERPA), etc.

21. Plaintiff seeks, initially, a temporary restraining order, a preliminary injunction, and then a permanent injunction and a declaratory judgment, and such other relief as this Court deems just. This court has subject matter jurisdiction pursuant to RIGL 8-2-13, and the regulations of the Board of Regents of Elementary and Secondary Education, which states that all matters may be enforced in "any court of competent jurisdiction."

22. The actions upon which this complaint is based took place in Kent County and the venue is thus proper in this Court pursuant to RIGL 8-2-27 and Rhode Island Superior Court Rule of Civil Procedure 18.

## BACKGROUND FACTS

### A. *Plaintiff's request for an Individualized Education Plan, as per the regulations governing the education of children with disabilities*

23. Beginning on or about August 29, 2006, plaintiff, John Doe and his parents, pursuant to federal and state regulations, IDEA, and Section 504, requested an Independent Education Plan ("IEP") for the education of a student with disabilities. At the request of Plaintiff, John Doe's treating psychologist provided consultative input regarding the plaintiff's disabilities.

24. John Doe is diagnosed with, and in treatment for, Post Traumatic Stress Disorder and Generalized Anxiety Disorder. He additionally has learning disabilities: Dysgraphia (a disorder of written expression) and Dyscalculia (a math learning disability). These disabilities are accepted as fact by Plaintiff and Defendant(s).

25. Pursuant to the above cited legal statues, civil rights, constitutional entitlements, and educational statutes, a child with a documented disability that substantially limits one or more major life activities is entitled to an IEP that is designed to afford him a "unique" education specific to his learning differences and/or medical disabilities. These disabilities are undisputed and accepted as fact, as per the IEP signed 21 September 2008.

26. The regulations regarding the formulation of an IEP for any student suspected of having a disability are governed by the LEA, the RIDOE, the US Department of Education, and the IDEA. Pursuant to the IDEA and state and federal regulations, an IEP is created by a team of "qualified professionals," the parents, treatment providers, and the student, if appropriate. Many of the procedural safeguards are specifically and explicitly defined to ensure the participation and input of the parents and child.

### B. *Exceptions to the exhaustion of administrative remedies per the IDEA*

27. The IDEA allows few exceptions to the rule requiring exhaustion of administrative remedies prior to requesting the jurisdiction of the court. [Doe v. East Greenwich School Department et al, RI Supreme Court 2005, Pihl v. Massachusetts Dept. of Ed., 9 F.3d 184, 190 (1st Cir.1993)] The United States Court of Appeals for the First Circuit has delineated the accepted exceptions to the exhaustion requirement (in numerous cases, and as concurred in RI Supreme Court, Doe v. EGSD):

*(1) the administrative process would be "futile or inadequate;"*

> *(2) the administrative process would "waste resources, and work severe or irreparable harm on the litigant;"*
> *(3) the issues raised "involve purely legal questions;" or*
> *(4) the agency prevents "the litigant from pursuing [his or] her claim at the administrative level."*
> *[Pihl v. Massachusetts Department of Education, 9 F.3d 184, 190-91 (1st Cir. 1993); Rose v. Yeaw, 214 F.3d 206, 210 (1st Cir. 2000). Honig v. Doe, 484 U.S. 305, 311 (1988)]*

28. In the above referenced Doe v. EGSD, the RI Supreme Court also made note that: *"The Plaintiff also alleges no facts suggesting bias on the part of the hearing officer that would render exhaustion of the IDEA process futile. Furthermore, an emergency situation does not exist such that exhaustion is unnecessary. [See Rose, 214 F.3d at 210-211"]* Both of these additional exceptions, as specifically defined by the RI Supreme Court (in a recent Supreme Court appeal involving the same LEA), are material to the current case.

29. In the above cited prior case of Doe v. EGSD, the plaintiff sought services for the 2003-2004 school year. The process began in June 2003, and rapidly progressed to the filing of a due process request in July 2003. After numerous delays, but within approximately six months, the parents refused to participate in further hearings with the school department.

30. The proximate case as per this complaint, has continued for an untenable 300 school days, or 18 calendar months. For the Plaintiff child, this amounts to more than 20% of his educational career. In this case, it was 192 school days from the initial request for evaluation until the IEP (insufficient per the IDEA regulations) was signed. A mediation was requested by the plaintiff after five months without an IEP, in an attempt to minimize adversarial pleadings. Although the mediated agreement consisted of minor and simple accommodations, the terms have been flagrantly ignored.

31. IDEA is designed (and has been enhanced) to protect the procedural rights of students and their families. Doe v. EGSD reinforces the regulations that the department of education shall render a "final decision," which must be "mailed to each of the parties," no later "than 45 days after the receipt of a request for a hearing." The plaintiff in this complaint waited 16 months after the request for appropriate accommodations to file a request for a due process hearing. The hearing officer, despite notice from the plaintiff regarding the 45 day timeline for a due process decision, did not schedule a hearing until 40 days after the request for due process (and 34 days after the requisite "resolution hearing" was waived). The hearing officer **failed to respond** to (or acknowledge) plaintiffs' express concerns regarding the timeline and the lack of production by the LEA.

32. Furthermore, said Hearing Officer rescheduled the "pre-hearing conference" against the objections of the Plaintiff, and without notifying Plaintiff of the change of date, nor of the rescheduled "pre-hearing."

33. Despite the plaintiff's communication, the hearing officer held a "pre-hearing conference" on the 40th day after the request was filed. The LEA had not produced the plaintiff's educational record despite RI general law, ***RI REGULATIONS of the BOARD of REGENTS for ELEMENTARY AND SECONDARY EDUCATION GOVERNING the EDUCATION of CHILDREN with DISABILITIES*** 300.562, "***The agency shall comply with a request without unnecessary delay and <u>before any meeting</u> regarding an IEP, or <u>any hearing</u> pursuant to these regulations, and in no case more than <u>10 calendar days</u> after the request has been made.***" (emphasis added) Despite the regulation, and the 34 days that had elapsed since the request, the hearing officer allowed four more days for the LEA to produce the records.

34. The hearing officer then scheduled the hearing to occur on Tuesday, 19 February 2008. Monday, 18 February was a state and federal holiday. The educational records were to be made available to Plaintiff on Friday, 15 February 2008, the last business day, in the afternoon, prior to the hearing date. The date of the hearing would be the 40th day after the resolution was waived.

35. The records were obtained on the afternoon of 15 February 2008. A routine USPS letter was received in the evening of 14 February 2008, stating (impossibly) that all evidence must be submitted 5 days prior to the hearing (of 19 February), but that the documents would not be available until four days prior to said hearing. To reiterate, the production of the educational record was on the 38th day following Plaintiff's written request and ***<u>after</u>*** the pre-hearing conference.

36. The records produced by the LEA are **<u>incomplete</u>**. At the time of the mediation of January 2007, two files were produced by the LEA. Documents from those (2) files are missing. Other documents have been altered; many documents exist in multiple copies that evidence alterations of the record. Numerous documents were produced that were not included in the education record at the mediation of last year, but are (now) dated prior to the mediation of January 2007. Records that were corrected per the mediation of last year have been modified or replaced. The record evidences abject disregard for issues of confidentiality, medical privacy, etc. Documents that were released to Plaintiff's private treating doctor were not included in the Plaintiff's alleged "complete" copy of the educational record.

37. In the Doe v. EGSD case, the RI Supreme Court avers that, in addition to the above cited exceptions to the exhaustion rule, *"bias on the part of the hearing officer ... would render exhaustion of the IDEA process futile."* In the current case, the hearing officer has evidenced bias. The Hearing Officer has met at least twice with the defense without the presence of the Plaintiff(s). She has responded to Defense requests for schedule changes, but has not responded to any communications from Plaintiff.

38. Plaintiff has requested default judgment due to the defense's failure to respond in whole or in part to the complaint. Pursuant to the regulations, a response is due within 10 days. [*[34 CFR 300.508(e)(1)] [20 U.S.C. 1415(c)(2)(B)(i)(1)]*. The hearing officer has informed

plaintiff's educational advocate that the hearing officer cannot read our request for default because that would constitute an ex parte communication. The hearing officer has similarly dismissed plaintiff's inquiry regarding the 45 day timeline (see above, Doe v. EGSD).

39. In the previous case of Doe v. EGSD, the RI Supreme Court also noted that an ***emergency situation*** could render exhaustion unnecessary (citing Rose, 214 F.3d at 210-211). In the prior Doe v. EGSD case, the court was unwilling to state that the delays (that had persisted for only a few months of one school year) constituted "irreparable harm" or "*an emergency situation.*" However, in regards to the current complaint, the failure to provide a free appropriate public education in this case has persisted for **300 school days**, or more than 1 ½ school years. The ongoing harm to a child with two undisputed anxiety disorders is indisputable; although it is doubtful that it could be argued that 2 years of education in the formative years of ANY child would not be extraordinary.

40. At this point, as identified by Paul Pontarelli, Esq of RIDOE, the child is not receiving an education on a consistent basis.

41. Plaintiff has requested ***interim order protections*** via the appropriate administrative protocol through RIDOE. It has been 75 days since this request, although RIGL 16-39-3.2 mandates that such hearing be held within 5 business days of receipt of such request. Similarly, the due process "procedural safeguard" state that a hearing will be completed and the answer mailed within 45 days. The minor Plaintiff continues to be exposed to ongoing harm, denial of an education, disability discrimination, discrimination based on misperceptions of typical gender roles, and increasing sexual harassment by an administrator, and by example, other students. This situation is escalating for all the students of Cole, placing them at risk of this escalating sexual improprieties.

42. It has been shown by the above justifiable doubt that the hearing officer evidences bias. The hearing officer's impartiality is questioned by her actions and inactions. The hearing officer has not acknowledged nor abided by the timelines, and is currently unavailable for more than 2 weeks during the timeline that she alleges the decision is due. The SEA has failed to respond with appropriate diligence to concerns of safety and request for an interim order, despite acknowledging that the plaintiff is not receiving an appropriate education. Per the exceptions, ***(1) the administrative process would be "futile or inadequate."***

43. Plaintiff has been victim of untoward delays, including 192 days to creation of the first IEP. It has been 300 school days with continued inconsistencies and failure to properly implement accommodations. The plaintiff (and his family) suffers ongoing harm to his good name, reputation, and integrity. The inconsistencies, harassment, and discrimination have exacerbated the plaintiff's documented and undisputed Post Traumatic Stress Disorder and Generalized Anxiety Disorder. This plaintiff has been bullied and assaulted on numerous

occasions without protections. The LEA's actions have caused clinical concerns and harmed the clinical relationship of the plaintiff child with his treating doctor. Per the exceptions, ***(2) the administrative process would "waste resources, and work severe or irreparable harm on the litigant;"***

44. Furthermore, per the exceptions, ***(3) the issues raised "involve purely legal questions;"*** The facts of this matter are undisputed, per the LEA. There has been no substantive response to the Plaintiff's complaint. As per the IDEA, a response that is provided within 10 days must provide *"the reasoning behind the disputed actions, details about the other options considered and rejected by the IEP team, and a description of all evaluations, reports, and other factors that the school used in coming to its decision."* In accordance with the RI Rules of Civil Procedure, ***RULE 8(b). GENERAL RULES OF PLEADING*, b) Defenses; Form of Denials.** A party ***shall*** state in short and plain terms his or her defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies.... **(d) Effect of Failure to Deny.** Averments in a pleading to which a responsive pleading is required, ...are ***admitted when not denied*** in the responsive pleadings. *(emphasis added)*

45. In the prior Doe v. EGSD case, the Supreme Court was *"... gravely concerned about and abhors the delays that took place before the department of education.... Necessary administrative processes must not become bureaucratic nightmares reminiscent of Kafka in which the claims of individual citizens largely are ignored."* The proximate case for this Plaintiff, encompassing 1 ½ years of elementary education, is "Kafkaesque."

## C. *Denial of Free Appropriate Public Education (FAPE)*

46. Numerous cases have upheld the essence of the IDEA, to protect the parents' interest in their child's welfare and education, and to ensure a "unique" and "individualized" education is provided for children with disabilities. The 2001 case Amanda J. -v- Clark County and Nevada State cites numerous cases that "clearly result in the denial of FAPE." The courts recognize that the denial of FAPE due to "...procedural inadequacies that result in the loss of educational opportunity," [quoting *W.G.*, 960 F.2d at 1484], or seriously infringe the parents' opportunity to participate in the IEP formulation process, [citing *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 994 (1st Cir. 1990); *Hall*, 774 F.2d at 635; *Target Range*, 960 F.2d at 1483], or that "caused a deprivation of educational benefits." [quoting *Roland M.*, 910 F.2d at 994; see also *Indep. Sch. Dist. Number 283 v. S.D.*, 88 F.3d 556, 562 (8th Cir. 1996) (quoting *Roland* with approval); *Doe v. Ala. State Dep't. Of Educ.*, 915 F.2d 651, 662 (11th Cir. 1990)].

47. Procedural violations that interfere with parental participation in the IEP formulation process undermine the very essence of the IDEA. An IEP which addresses the unique needs of the child cannot be properly developed if those people who are most familiar with the child's needs are not involved or fully informed. In *Target Range*, for example, the court

held that the Target Range School District "*failed to fulfill the goal of parental participation in the IEP process and failed to develop a complete and sufficiently individualized educational program according to the procedures specified by the Act,*" thus denying a FAPE [960 F.2d at 1485].

48. The current case deprived the parents of input regarding their child's educational process, endorsed grievous delays effectively denying a FAPE for 1 ½ years of compulsory education, and "driv[ing] a stake into the very heart of the Act." [*Town of Burlington v. Dept. Of Educ.*, 736 F.2d 773, 783 (1st Cir. 1984) (holding that the Town's failure to give the parents proper notice violated the Act's procedural requirements), aff'd *Sch. Comm. of Town of Burlington v. Dept. Of Educ.* 471 U.S. 359 (1985)]

49. Once again, the court is faced with a situation in which the parents did not evidence a "studied lack of cooperation with ongoing attempts to develop the . . . IEP," as was the case in *Roland*, but to the contrary, the parents (with the assistance of the treating doctor) have been steadfastly advocating for non-adversarial resolution. The child, in the midst of obstructions and repeated failures of the procedural safeguards, continues to be denied a FAPE, and at this time, is denied any education. The parents and doctor have documented ongoing requests, pleadings, and demands for services and accommodations, as well as an end to the discriminatory and harassing behaviors to which the plaintiff has been subject.

50. ***Procedural Safeguards***

51. As recently as 19 December 2007, the minutes of the public meeting of the *RHODE ISLAND BOARD OF REGENTS FOR ELEMENTARY AND SECONDARY EDUCATION, "Regents and RIDE's responsibility to assess the needs of students with disabilities, assign personnel in accordance with those needs, and evaluate the delivery of services to determine whether the agency's program conforms to the requirements of the regulations and the Individuals with Disabilities Act."* The SEA has grievously ignored the IDEA regulations, and the SEA's supervisory capacity for all LEA's in the state. It appears that the education of the Plaintiff and the regulatory obligations of the SEA and LEA have fallen prey to a myriad of administrative hurdles that forget the most basic of obligations, that of education of each and every child in the State of Rhode Island.

52. Furthermore, the RIDOE and the LEA have published "procedural safeguards" that are designed to protect all students, as well as teachers and administrators. The abject failure of designated safeguards in the immediate case is indicative of a system that has failed in its obligation to provide a *free appropriate public education* to the Plaintiff child. The Plaintiff, by and through his parents, endured 192 days from the date of the request for an IEP until its signature. The parents sent numerous letters requesting services, and requested and participated in a mediation more than 14 months prior to this action. They did not file a "complaint" or a request for "due process" in their quest to obtain an education for the Plaintiff without malice, discord, or an adversarial relationship. The Plaintiff and his parents endorsed

consultative communications with the treating psychologist, again in their quest to obtain the most appropriate services for their child. The LEA failed to abide by the terms of the mediation, in fact unilaterally altering the diagnoses on the IEP, failing to provide an IEP throughout the 6th grade year, and other fraudulent misrepresentations.

53. Furthermore, the Plaintiff and his parents have requested an interim order and a due process hearing through the procedural safeguards of the RIDOE. Once again, the legal regulations and "procedural safeguards" have failed to protect the rights of the Plaintiff. An interim order has been requested in writing on at least five occasions in the interceding 75 days since the complaint was filed. The regulations per RI General Laws, **RIGL 16-39-3.2** ***Interim Protective Orders*** provides that the Commissioner of the RIDOE will conduct a hearing within 5 working days of the request for relief, and the decision will be issued within 5 working days of the completion of the hearing. An interim order entitles the Plaintiff to protections "…pending a hearing as may be needed to ensure that a child receives education in accordance with applicable state and federal laws and regulations during the pendency of the matter." The Plaintiff is currently not receiving an education, despite repeated requests for accommodations, or absent accommodations as specified in the IEP, then compensatory education services such as tutoring. The requests have been steadfastly ignored.

54. A due process hearing was similarly requested in a complaint filed on 2 January 2008. The regulations state that a hearing will be held and a decision mailed within 45 days. The date of this request for injunctive relief is the 75th day since the complaint was received.

55. ***<u>The LEA's failure to appropriately respond to the complaint</u>***

56. The LEA did not respond to said complaint for <u>**54**</u> days. Pursuant to *34 CFR 300.508(e)(1)] [20 U.S.C. 1415(c)(2)(B)(i)(1),* the LEA must respond within ***10*** days. Similarly, the IDEA regulations mandate that the LEA's answer to the complaint must "*…provide parents with the reasoning behind the disputed action, details about the other options considered and rejected by the IEP team, and a description of all evaluations, reports, and other factors that the school used in coming to its decision.*" Pub. L. 108-446, Section615(c)(2)(B)(i)(I),118 Stat. 2718, 20 USCA Section 1415(c)(2)(B)(i)(l) (Supp. 2005). Despite the untoward and unwarranted delay, the LEA's response was perfunctory.

57. The LEA fails to meet even the most basic of the procedural requirements in the delayed "Answer." First and foremost, the "Answer" is a demand for dismissal alleging insufficiency of Plaintiff's complaint, as well as a mockery of the plaintiff's educational concerns. It is unclear if the LEA's representative has read the IDEA regulations. Pursuant to 34 CFR 300.508(d)(1); and 20 U.S.C. 1415(c)(2)(A), 1415(c)(2)(C)], "*the due process complaint* ***<u>must</u>*** *be deemed sufficient unless the party receiving the due process complaint notifies the hearing officer and the other party in writing,* ***<u>within 15 days of receipt</u>*** *of the due process complaint, that the receiving*

*party believes the due process complaint does not meet the requirements in 34 CFR 300.508(b)."* A perfunctory "Answer" 54 days subsequent to receipt of the complaint does not approximate the procedural safeguards of the IDEA regulations; this "Answer" ignores the above regulation that states that the complaint "must" be accepted unless it is questioned within 15 days.

58. Furthermore, there are no provisions within the IDEA for "dismissal" of a child's request for a due process hearing regarding the provision of a ***free appropriate public education***. It is disturbing that the LEA would seek to "dismiss" a reasonable due process request (based on a perceived technicality) from parents who have legitimate concerns regarding the appropriateness of their child's education. It is, of course, a Constitutional right, pursuant to the Fourteenth Amendment, to the entitlements of the protections of due process.

59. The IDEA regulations specify that a due process complaint should include:

> • *A description of the nature of the problem of the child relating to the proposed or refused initiation or change, including facts relating to the problem; and*
>
> • *A proposed resolution of the problem* **to the extent known and available** *to the party at the time. (emphasis added) [34 CFR 300.508(a) and (b)] [20 U.S.C. 1415(b)(7)(A)]*

The representative of the LEA mocks the complaint as filed on behalf of the child and seeks a dismissal because of the inability of the plaintiff to recommend specific resolutions. Unfortunately for the Plaintiff child, the violations are so numerous and pervasive that resolutions are beyond the scope of the (non-lawyer) parents representing the child's interests. In addition, the LEA has continually failed to produce all documents relative to this matter, thus impeding and obstructing the Plaintiff's ability to articulate appropriate remedy. Thirty-eight days after written request, and 4 days subsequent to the hearing officer's order, the records that have been produced by the LEA have been altered, are incomplete, and are in alarming violation of the child's rights to medical and educational privacy. Once again, the regulations mandate the records to be produced within 10 days of the request [ *34 CFR 300.508(e)(1) and 20 U.S.C. 1415(c)(2)(B)(i)(1)]*.

60. Furthermore, it is established case law that the complaint should not be dismissed if the plaintiff did not (or, as in this case, ***could not***) seek appropriate remedy. In the matter of Doe v. State of Wisconsin, Case No.: LEA-99-033, (quoting the US Supreme Court decision in *Hendrick Hudson Central School District Board of Education v. Rowley*), ***"...[t]he District seeks to discharge the [Family]'s denial of FAPE claim because they asked for the wrong remedy. This goes too far. It is up to the ALJ to give content to the FAPE requirement. Rowley at 187. To dismiss a claim because of an incorrect remedy request denies the ALJ an opportunity to fashion an appropriate remedy if needed."*** The LEA presumes, despite Congress' obvious intent otherwise, that the Plaintiff, the minor child's parents, or his treating doctor should have no input regarding Plaintiff's education. In fact, the LEA's representative has averred that the

LEA is attempting to provide "what is best for the child,, and the (Plaintiff's) parents have continually interfered with superfluous concerns regarding Civil and Constitutional rights.

61. The LEA proffers three responses beyond the blanket request for "dismissal" of the Plaintiff's due process complaint. First, the LEA states that "*any purported delay*" in the implementation of the IEP for the Plaintiff was "*the direct result of the conduct by Petitioner's parents.*" Second, the LEA alleges that "*all services that were necessary and appropriate*" were provided to the Plaintiff for the **13 months** from the date of request for evaluation until the signing of the IEP. Third, all allegations regarding civil rights and "*any other allegations*" are denied. At no time does the "Answer" provide "*reasoning... details... evaluations, reports, and other factors that the school used in coming to its decision.*" (citation in paragraph 58)

62. Although an IEP is legislated to be completed and in effect within 60 days, the LEA justifies its 192 day delay by averring that the LEA provided "***all services that were necessary and appropriate to meet all the needs of the Petitioner***" during this 13 month delay. The LEA parodies the IDEA and Congress' intent by implying that unilateral, subjective, and intermittent "services" warrant this unfathomable delay as well as the abject failure to provide a *free appropriate public education* (as per the IDEA) for the entire 6th grade education of Plaintiff. The LEA disparages Congress and the intent of the IDEA by presuming that the LEA can independently determine the needs of Plaintiff child. The regulations, however, unequivocally state that services may not be provided without an appropriate IEP: "*Each public agency shall ensure that an IEP is in effect* ***before*** *special education and related services are provided to an eligible child under this part*" §300.342(b)(1)(i)(emphasis added). Per the letter and the spirit of the IDEA, special educational services cannot be provided without informed consent. "*Parents* ***must*** *consent to the provision of special education and related services.*" *(34 CFR 300.505(a)(1)(ii).*

63. Furthermore, Congress had the foresight to recognize that "***... individualized education program teams alone did not have the expertise to determine the relationship between disability and behavior***." The LEA chooses to disregard the law, at the expense of 1 ½ years of Plaintiff's education during the formative years, as well as at untoward emotional cost.

64. Finally, the LEA avers in its "Answer" that all allegations that are not denied are "*the direct result of the conduct by Petitioner's parents.*" The parents have continued to advocate for services for their child, the Plaintiff, for 300 school days, fully 20% of this child's educational career to date. The parents have included the treating doctor, requested mediation and due process, attended a myriad of meetings and written innumerable (and unanswered) letters. The parents acknowledge declining (postponing) one meeting while the father was in the ICU recovering from a myocardial infarction and 7 vessel cardiac bypass surgery. Of note, however, that meeting was 'demanded' despite the mediated agreement that stated a meeting would be held and the IEP would be formulated **after** the report from the independent

consultant was available. Said report was not available at the time of that demand, and Plaintiff contends that the circumstances were exigent. Curiously, we were unable to obtain a 'medical pass' from the cardiac surgeon to leave the ICU to attend an IEP meeting.

65. Most meetings were demanded on short notice (in violation of the regulation that mandates 10 day notice and scheduling at mutually convenient time and place). The parents participated in a telephone consultation during a religious period of mourning. Ten months into the process without an IEP the mother attempted to attend a meeting on less than 3 days notice, and physically collapsed because of medical illness. However, she had been informed that the meeting would occur without her despite the extreme medical circumstances with which the family was faced.

66. ***Harassment, Bullying, and Discrimination***

67. **RIGL 16-21-26 *Health and Safety of Pupils, Student Discipline Codes*** states, in part:

> *"Harassment, intimidation or bullying" means an intentional written, verbal or physical act or threat of a physical act that, under the totality of circumstances:*
> - *A reasonable person should know will have the effect of: physically harming a student, damaging a student's property, placing a student in reasonable fear of harm to his or her person, or placing a student in reasonable fear of damage to his or her property; or*
> - *Is sufficiently severe, persistent or pervasive that it creates an intimidating, threatening or abusive educational environment for a student. ...*
>
> - *The board of a school district of a public school shall adopt a policy prohibiting harassment, intimidation, or bullying at school. The policy shall specifically prohibit harassment, intimidation and bullying by students at school and address prevention of an education about such behavior. The policy shall be adopted through a process that includes representation of parents or guardians, school employees, volunteers, pupils, school administrators and community representatives.*
> - *A school district or public school academy shall incorporate information regarding the school district or public or private school academy's policy against harassment, intimidation or bullying into each school's employee training program.*

68. According to the Cole student handbook:

> ***School's Petition:*** *A student who attends Cole Junior High School or any of its functions has the same rights as all other citizens. ...**Harassment, if allowed to continue, creates a climate of fear and hostility**. The Administration takes harassment very seriously and regards it as a **violation of Civil Rights**. ... Any student feeling unsafe or harassed should seek out his/her counselor, classroom teacher, or the principal immediately.*

The above citation is uniform throughout the LEA. Each school of the East Greenwich School district is supervised by the East Greenwich School Committee, the East Greenwich School

Department, and supervisory authority is under the auspices of the Rhode Island Department of Education.

69. The Plaintiff has been subject to unduly harsh, punitive, and discriminatory disciplinary actions. The Plaintiff's IEP which documents the medical necessity of "positive behavioral supports... teacher support and encouragement..." has been unilaterally disregarded, and the child subject to stricter disciplinary parameters than his nondisabled peers.

## Violations

70. The LEA has consistently and admittedly limited the Plaintiff's and parents' role in the creation of the IEP and the determination of appropriate services. The IDEA and RI and Federal laws mandate parental involvement as part of the IEP "team," and ensure procedural safeguards to protect the child and parents in this process. Congress sought many layers of protections due to the nature of the parent-child relationship, and the explicit understanding that appropriate services cannot be implemented absent the input of those who know the child best. In the proximate case, the 1 ½ years denial of FAPE, ongoing harassment and discrimination, and the exclusion of the parents and treating doctor have allowed the LEA and the SEA to "...drive a stake into the very heart of the Act." [*Town of Burlington v. Dept. Of Educ.*, 736 F.2d 773, 783 (1st Cir. 1984) (holding that the Town's failure to give the parents proper notice violated the Act's procedural requirements), aff'd *Sch. Comm. of Town of Burlington v. Dept. Of Educ.* 471 U.S. 359 (1985)]

71. As per the amicus brief filed by the ACLU in the recent RI Supreme Court case ***JESSICA G. v. Westerly School Dept., C.A. #: 07-0069,*** it is the fundamental, constitutionally protected liberty interest of a parent to raise a child. The United States Supreme Court has steadfastly protected the parent's right to the "*care, custody and management of his or her children*" as an interest "*far more precious*" than any property right. [May v Anderson, 345 U.S. 528, 533 (1952), as quoted in Jessica G.]. In Lassiter v Dept. of Social Services, 452 U.S. 18, 27, the Court emphasized that the parent-child relationship "*is an important interest that 'undeniably warrants deference and absent a powerful countervailing interest protection,'*" [Jessica G., quoting Stanley v Illinois, 405 U.S. 645, 651 (1972)]. The actions of the LEA, SEA, and the individuals individually named in the complaint have violated the parents' Constitutionally protected right to raise their child, and the Plaintiff's Constitutionally protected right to the parental relationship.

72. Plaintiff has the protections of the IDEA, RI General Laws Chapter 16, Federal Laws, and Section 504 to a free appropriate public education. Pursuant to the IDEA, as a child with disabilities, Plaintiff is entitled to an IEP within 60 days of such request that is designed to meet his unique educational needs. The appropriate services and accommodations are to be determined with a "team" of qualified professionals, including the child (when appropriate),

the parents, the treating doctor, and any other individuals that the child or family believes has knowledge of the child's needs. The untoward delays, failure of proper notice, innumerable violations of the regulations for the evaluation of the child and formulation of the IEP, have resulted in 1 ½ years of denial of FAPE to Plaintiff.

73. The Plaintiff, by virtue of his disabilities, is entitled to civil rights protections, and to receive an education that is free of harassment, threat, or intimidation. The administrators and teachers have discriminated against this minor child and created a "hostile environment" due to issues of disability discrimination. The Plaintiff has been subject to numerous violations of medical privacy, questions regarding medical diagnoses, alteration of educational and/or medical records, and subject to punitive, subjective discipline due to the psychiatric nature of his disabilities. In 1974, Congress amended the definition of disabled individuals to counter the "archaic attitudes and laws" [S.Rep. No. 93-1297, p. 50 (1974)] that impede individuals with disabilities. In implementing this change, "Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment." [As quoted in US Supreme Court, School Bd of Nassau County v. Arline, 480 US 273 (1987), No. 85-1277]

74. Furthermore, the US Department of Education Office of Civil Rights has issued policy regarding disability harassment (see USDOE letter of July 2000). "Disability harassment is defined as 'intimidation or abusive behavior toward a student based on disability,' and includes 'verbal acts and name-calling, as well as nonverbal behavior, such as graphic and written statements, or conduct that is physically threatening, harmful, or humiliating.'"

75. It is the ignorance of the teachers and administrators of the LEA and SEA that have resulted in ongoing harassment and discrimination. The Plaintiff is ostracized from his peers, repeatedly "punished" for manifestations of his disability, and humiliated. He has been denied the protections of his good name and reputation, as are all individuals in the United States. Based on ignorance [per Merriam Webster Dictionary: "the lack of knowledge, education or awareness"] Plaintiff's medical symptomatology is misinterpreted and misrepresented by individuals without the training or medical acuity to comprehend such symptoms. Further manifestation of ignorance or closed minds has resulted in subjective "labeling" of Plaintiff, and subsequent harassment and abuses. Despite the alleged "protections" of the IEP, that is legally enforceable document, these individuals have chosen to make their own subjective and uneducated determinations and to act in a manner that is contrary to their role as "educators," in direct conflict with the laws that protect a child with disabilities and an IEP, and in contradistinction to the Civil Rights protections for individuals with disabilities.

76. Plaintiff's doctor has consulted on numerous occasions to the LEA and the teachers and administrators. Most recently, on 7 December 2007, the doctor had a consultation with teachers and staff. This consultation was scheduled and communications were initiated without the awareness or consent of the Plaintiff and parent. This is in direct violation of the IDEA, RI and federal laws, HIPAA, FERPA and ethical obligations. It was only because of the doctor's communication that the Plaintiff was informed of this meeting's arrangement. Similarly, in violation of the above laws, educational records were sent to the doctor. These records have never been produced to Plaintiff, including when the educational file was ordered by an "impartial" hearing officer to be produced in full. Individuals in attendance at this meeting, and administrators who were not in attendance, have defamed Plaintiff's doctor, negatively impacted this longstanding relationship, and at the extreme detriment of the Plaintiff. Although the doctor has disputed these fraudulent misrepresentations, the individuals so named have continued to cite this consultation as reason for reinterpretation and rejection of the Plaintiff's IEP, as well as further abuses of the Plaintiff. The individuals who have "interpreted" the doctor's consult are not medically qualified to make such determinations, and furthermore, the IEP remains a legally valid document.

77. In conflict with the legality of the IEP and the doctor's medical intentions, as well as the Plaintiff's parents participation, the individuals above named have determined that they are individually and/or collectively more knowledgeable and not bound by the IEP, the IDEA, the ethical obligations of the doctor-patient relationship, the parent-child relationship, the ADA, Civil Rights, Constitutional privileges, federal and state laws, and even their own LEA regulations, and have unilaterally, subjectively, and with gross prejudice discriminated against said minor Plaintiff, and his family.

78. Said discrimination has caused irreparable harm to an "emotionally vulnerable" Plaintiff with disabling anxiety. Plaintiff has suffered irreparable harm to his reputation, good name, and integrity. He has suffered marked exacerbation of his disabling anxiety, and irrevocably lost 1 ½ years of foundational education. Plaintiff has been denied the most basic of Constitutional rights, that of due process, on a daily basis by the above named defendants, in more specific alleged "disciplinary" actions, in the IEP process, by the LEA and the SEA. Plaintiff has currently waited 75 days for an interim order hearing via the RIDOE "procedural safeguards" that mandate, by RIGL 16-39.2, a hearing within 5 days of the request for relief.

79. Said discrimination and harassment has defamed the minor Plaintiff with public disclosures to peers and, as such, likely conveyed to the community at large. This defamation of a minor child's character has resulted in permanent injury to his reputation. The defendants have similarly slandered Plaintiff throughout a Junior High School environment, making statements in an environment of intimidation and unequal relationships (administrators and teachers to students), that constitute "per se" defamation and slander.

80. The above named defendant, principal of Cole Junior High has behaved in an increasingly aggressive and sexualized manner to the minor Plaintiff. Defendant has failed in his legal and ethical obligation to keep all children in his care safe from abuse, physical and verbal, and has, in fact, contributed to the abuses perpetrated upon the Plaintiff. Per RI and Federal laws, and Cole's own student behavior code, *"The Administration takes harassment very seriously and regards it as a **violation of Civil Rights**."* Nonetheless, the principal and teachers have tolerated an environment of harassment, hostility and abuse; failed to protect the Plaintiff from repeated expressed concerns of harassment and violence; and have inflicted such harm personally on Plaintiff.

81. **RI General Laws, 16-12-3 Duty to cultivate principles of morality**, states that it is the obligation of teachers to *"cultivate… principles of morality and virtue."*

82. Pursuant to **RI General Laws 11-9-5.3 Child Abuse – Brendan's Law**, *"… a person having care of a child… because of a legal obligation… knowingly or intentionally: Inflicts upon a child any other serous physical injury, shall be guilty of second degree child abuse."* The law defines *"serious bodily injury" as a "physical injury that … causes… impairment of the function of any bodily parts…."* Our courts have ruled that psychological injury, in the context of a known, biologically-based, mental health disability, is a *"physical injury."* Certainly, our literature has well established that the psychological injuries are frequently more pervasive and devastating than physical injury.

83. **RI General Laws 11-9-5 Cruelty or neglect of a child** states that *"Every person having the … control of any child… who shall treat the child with gross or habitual cruelty"* is guilty of a felony.

84. The RI General Laws regarding stalking, **RIGL 11-59-2 Stalking prohibited** defines "Any person who: (1) harasses another person; or (2) willfully, maliciously, and repeatedly follows another person with the intent to place that person in reasonable fear of bodily injury, is guilty of the crime of stalking. RIGL 1-59-1 defines "harasses" as "a knowing and willful course of conduct directed at a specific person with the intent to seriously alarm, annoy, or bother the person, which serves no legitimate purpose… (and) would cause a reasonable person to suffer substantial emotional distress."

85. Plaintiff's Civil Rights have been ignored. Pursuant to the federal statute entitled "Civil Action for Deprivation of Rights," 42 USC Section 1983

> *Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws,*

> *shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress....*

86. Similarly, RI's laws afford individual civil rights protections, pursuant to **RIGL 42-9.3-2 Action by attorney general,**

> *Whenever any person,... intentionally interferes or threatens to intentionally interfere, by physical force or violence against a person,... with the exercise or enjoyment by any other person of rights secured by the US Constitution or the laws of the US or of rights securd by the Constitution of RI or laws of the state, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the rights secured.*

87. Furthermore, RI maintains a monitoring system for victims of "hate crimes." "Hate crime" is defined as *"any crime motivated by bigotry and bias, including but not limited to threatened, attempted, or completed acts that... have been motivated by racial, religious, ethnic, sexual orientation, gender or disability prejudice."*

## TEMPORARY RESTRAINING ORDER AND EMERGENCY INJUNCTIVE RELIEF

88. Plaintiff petitions this court for immediate injunctive relief. Plaintiff is currently unable to receive an education. He has not received a free appropriate public education for 1 ½ years. Plaintiff's requires the immediate protections of this court to avoid ongoing, further irreparable harm. There is not only a ***substantial threat of irreparable harm***, but in the proximate case there already exists irreparable harm.

89. Pursuant to the above cited procedural and civil rights violations, there is a ***substantial likelihood of success on the merits of the case***.

90. The ***balance of harms weighs in favor of the Plaintiff***. There are no harms to the defendants to the granting of this preliminary injunction. The granting of this injunction would preserve what is legally mandated to be the status quo, but which the defendants have refused to provide. The IEP is a legally enforceable document. The requested injunctions are the most elementary: requesting academic supports as appropriate; cessation of all humiliating, ostracizing, discriminating, harassing, and threatening acts; "positive behavioral supports," First Amendment protections; Fourteenth Amendment protections to due process; cessation of sexually harassing and bullying actions; and restraint from the direct involvement of the principal and Special Education Director with Plaintiff.

91. The grant of an injunction ***would not disserve the public interest***. There can be

no harm to the 'public interest' in the immediate injunctive protections of minor Plaintiff's rights to an education free of harassment, threat, or intimidation. In fact, there can be ongoing harm to the public interest by failing to provide an injunction and continuing to expose other vulnerable, developing minds to this intolerable prejudice. Furthermore, there are concerns of sexually explicit, inappropriate actions on behalf of certain defendant(s).

92. A temporary restraining order would act to protect the minor plaintiff's Constitutional right(s), as well as state-mandated obligation, to attend school. Plaintiff seeks to bar the above named defendants from further failure to provide a *free appropriate public education* with necessary accommodations to his disabilities, and free of discrimination, harassment, defamation, and arbitrary and capricious actions that have irreparably harmed his good name and reputation, and have resulted in more than 300 school days of lost education benefit.

93. Furthermore, and most importantly, Plaintiff avers that the escalating sexualized nature of contacts with the defendant principal places Plaintiff and other children at imminent risk.

## Request for Permanent Injunction

94. Plaintiff requests a permanent injunction that protects Plaintiff from further and ongoing irreparable harm to his good name and reputation, his current and future educational potentials, his future career potentials, and irreparable psychological harm. He seeks a free appropriate public education as per the laws of compulsory education and the protections of the IDEA, RI and federal laws, the ADA, Section 504, and Constitutional protections. The minor Plaintiff has suffered discrimination, harassment, abuse, bullying, and assaults without protections. He has been denied basic safety protections, and the right to attend school in a safe environment, free of prejudice or intimidation.

95. Plaintiff seeks "reasonable attorneys fees" as per the regulations, awarded to the plaintiff's parents as pro se counsel throughout the 300 days of the LEA's and SEA's actions.

96. Plaintiff's costs and expenses.

97. Plaintiff requests such other relief as the Court should deem appropriate and just, including actual and punitive damages, and compensatory education.

98. Plaintiff seeks oversight of the LEA and the individuals named in this complaint to ensure compliance with disability protections, and the protections of other minor children who are entrusted to their care.

99. Plaintiff seeks assistance from the court in reparations to Plaintiff's reputation among peers and in the community. Plaintiff has suffered public humiliation, violations of medical privacy, and discrimination based on disability, parents' disabilities, perceptions of traditional gender roles, and ongoing verbal and physical assaults. Plaintiff seeks the court's assistance in determining an appropriate resolution to this untenable and unlawful situation.

## Summary Judgment

100. Paragraphs 1 through 78 are incorporated herein as if set forth fully.

101. Plaintiff respectfully requests that the Court grant summary judgment pursuant to the RI Superior Court Rule of Civil Procedure 56, stating that summary judgment may be granted when there is "*...no genuine issue of material fact exists and the moving party's claim warrants judgment as a matter of law.*" RI Super. R. Civ. P. Rule 56(c). Harritos, et. Al v. Cambio, et. al, 683 A.2d 359 (RI 1996). The LEA and SEA and individuals so named have exhibited a pattern of disregard and blatant violations of the regulations and procedural safeguards specifically enacted to protect students, parents, and educators.

102. The LEA failed to file responsive pleadings within the 10 day regulations. Furthermore, upon filing an "Answer" 44 unexcused days late, the response does not meet the specific IDEA, or RI and federal law statutes, and does not provide a "responsive" pleading. Plaintiff's requests for information have been ignored.

103. Plaintiff's requests for basic safety protections have been similarly ignored. Plaintiff's requests to receive an education without harassment, abuse, and discrimination have not been acknowledged. Defense has also ignored Plaintiff's repeated requests for compensatory education services due to the failure to provide services as per the IEP and the ongoing harassment resulting in exacerbation of the disabling medical conditions.

104. Plaintiff has pursued appropriate administrative remedies throughout 300 school days of seeking a *free appropriate public education*. Plaintiff has been subject to denials of due process, verbal and physical assaults, discrimination on the basis of disability and perceptions of gender specific roles, denial of procedural safeguards, and escalating sexual harassment and abuse.

105. The LEA has failed to maintain the "status quo" during the pendency of the proceedings. Subjective, unilateral, discriminatory, and harmful actions continue to create an environment of escalating hostility in which the minor Plaintiff is not able to receive *a free appropriate public education*.

106. Wherefore, Plaintiff respectfully requests that the Court grant a summary judgment, declaring that the Plaintiff minor child is entitled to a *free appropriate public education*, free of

harassment, abuse, discrimination, and with an IEP that is appropriate to his "unique needs." Plaintiff is entitled to the protections of Civil Rights and the RI and US Constitutions, and RI and federal laws.

107. Plaintiff is entitled to an award of "reasonable attorney's fees," cost and expenses, and other such relief as this Court may deem proper.

Plaintiff,
John Doe
By and through his parents,

______________________________

______________________________

Sarah F. Boyle, MD
Hugh J. Boyle
5 Lynn Circle
East Greenwich, RI 02818
(401) 884-4472

Dated: March 17, 2008